UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ENGINEERED MEDICAL SYSTEMS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.1:05-cv-0170-DFH-TAB ) |
| GEORGE M. DESPOTIS, M.D., | ) ) |
| Defendant. | ) |

ENTRY ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Plaintiff Engineered Medical Systems, Inc. ("EMS") has filed suit against defendant George M. Despotis, M.D. on the basis of diversity jurisdiction. EMS seeks a declaratory judgment and money damages regarding a dispute over its patent licensing agreement with Dr. Despotis. Dr. Despotis has moved to dismiss for lack of personal jurisdiction and improper venue. In the alternative, he moves to transfer venue under 28 U.S.C. § 1406 to the Eastern District of Missouri, where he resides.[1]  As explained below, the court finds that both personal jurisdiction and venue are proper in this court, so defendant's motion to dismiss or transfer venue is denied.

---

[1] Defendant's motion fails to request transfer to a specific district in Missouri. Because he resides in Des Peres, Missouri in St. Louis County, the correct district would be the Eastern District of Missouri. See 28 U.S.C. § 105(a)(1).

I.    *Factual Background*

Plaintiff EMS is an Indiana corporation with its principal place of business in Indiana.  Dr. Despotis is a citizen and resident of Missouri.  He holds a patent for an endotracheal intubation device.  In exchange for royalty payments, in 1996 Dr. Despotis granted EMS an exclusive license to make or sell products using his patent.  Section 10.01 of the license allows EMS to reduce its royalty payments by as much as 50 percent in the event EMS pays third parties to settle or satisfy claims of patent infringement.  In 1999, EMS entered into a cross-license agreement with Nellcor Puritan Bennett, Inc. ("NPB").  The present record provides little information about the circumstances of that transaction.  EMS alleges that it agreed with Dr. Despotis to amend their license agreement to provide:

> EMS shall have no right to offset any costs or expenses together with any legal fees, liabilities or other claims associated with entering into a cross-license agreement with NPB against royalties payable to Despotis under this Agreement or arising from any claim relating to the consent granted by Despotis or any activities undertaken by or under the direction of EMS relating to the NPB cross-license agreement.

Cplt. ¶ 10. EMS further alleges that it later began producing and selling medical devices under the Despotis license, and then was sued by NPB for infringing two of its patents.  The NPB suit claimed that EMS's activities were not covered by the 1999 cross-license.  EMS and NPB settled the lawsuit by executing an amended cross-license in September 2003.

EMS filed this action seeking a return of half of the royalties paid to Dr. Despotis in January 2005 and a declaratory judgment that it may reduce royalty payments to him for the remainder of the contract term.  The court has jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. §§ 2201.

II.   *Personal Jurisdiction*

Defendant Despotis has moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Without an evidentiary hearing on this issue, EMS need only make a prima facie showing that Dr. Despotis is subject to personal jurisdiction here, and plaintiff is entitled to the benefits of its allegations and any conflicts in evidentiary submissions.  See *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  The absence of factual allegations in the original complaint to support personal jurisdiction does not matter.  Such allegations are not required, but the motion to dismiss puts the burden on the plaintiff to show that personal jurisdiction is proper.  *Id.*

A federal district court exercising diversity jurisdiction has personal jurisdiction over a non-resident defendant only if a court of the state in which it sits would have such jurisdiction.  *Purdue Research*, 338 F.3d at 779; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute

are met and whether federal due process is satisfied.  *Purdue Research*, 338 F.3d at 779; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind. App. 2002).

Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute.  It provides for specific jurisdiction over non-residents: "Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent. . . ."  There follows a list of eight grounds, including "doing any business in this state." Following the response to its decision in *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227 (Ind. 2000), the Indiana Supreme Court added this language after the list of eight grounds: "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  This amendment, effective January 1, 2003, means that a plaintiff can now establish jurisdiction by showing only that its exercise is constitutional.   Ordinarily, a plaintiff may establish jurisdiction by showing that the claim arises from one or more of the enumerated grounds for jurisdiction.  The parties have not argued that there is any difference between the federal and state constitutional standards, so the court applies federal due process standards. See, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 469-70 (1985).[2]

---

[2]Prior to the Indiana Supreme Court's decision in *Anthem*, deciding personal jurisdiction in Indiana required consideration only of federal due process (continued...)

---

[2](...continued)
standards. For example, *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1243 (7th Cir. 1990), was one of many cases in which the Seventh Circuit followed Indiana Court of Appeals decisions reading the earlier version of Indiana Trial Rule 4.4(A) to extend personal jurisdiction to the limits of federal due process. In *Anthem*, the Indiana Supreme Court read Rule 4.4(A) more narrowly and required courts to determine first whether one of the eight enumerated grounds for jurisdiction is satisfied and second whether jurisdiction is constitutional. 730 N.E.2d at 1232. The *Anthem* decision called into question, however, whether Indiana courts could exercise general jurisdiction over a non-resident who had continuous and systematic contacts with the state, but where the particular case did not arise from those contacts. The 2003 amendment restored the prior reach of the Rule to the federal constitutional limits, including exercise of general jurisdiction over non-residents in appropriate cases.

A recent decision by the Indiana Court of Appeals reads the 2003 amendment as not affecting the *Anthem* two-step analysis. In *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 969 n.2 (Ind. App. 2004), the court disagreed with a decision from the Northern District of Indiana which had concluded that the 2003 amendment allowed a one-step constitutional analysis. The Court of Appeals wrote: "we note that if Indiana's long-arm statute was intended to be coextensive with the limits of personal jurisdiction under the Due Process Clause, the enumerated acts listed in Rule 4.4(A) could have been deleted and the Rule could have been rewritten with general language, like the 'any constitutional basis' statutes used in several other states." 816 N.E.2d at 969 n.2, citing *Anthem*, 730 N.E.2d at 1232, and disagreeing with *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004).

In light of the history of Indiana's long-arm rule, the *Pozzo Truck* reasoning is not persuasive on this point. First, its reasoning effectively deprives the 2003 amendment of any effect. Second, its reasoning ignores the introductory phrase "In addition" for the extension of long-arm jurisdiction to constitutional limits. Third, its explanation for the retention of the eight enumerated grounds is not compelling. By retaining the enumerated grounds in the Rule, the Indiana Supreme Court ensured that the text of the Rule itself would guide the bench and bar in the vast majority of cases. Lawyers and judges need not explore in every routine case the vast body of case law interpreting both Constitutions. By adding the language "any basis not inconsistent with the Constitutions," the Indiana Supreme Court restored the extension of Indiana courts' power to protect the legal rights and interests of Indiana residents to the full extent permitted by the Constitutions. This court therefore agrees with *Litmer* that only the constitutional analysis is now required in cases where jurisdiction is contested. See also *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 2005 WL 106936,
(continued...)

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Personal jurisdiction under Indiana Trial Rule 4.4(A) may be either general or specific. *Alpha Tau Omega v. Pure Country, Inc.,* 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002); see also *Anthem*, 730 N.E.2d at 1239-40 (finding one defendant's business contacts sufficient to establish general jurisdiction). General jurisdiction makes a non-resident defendant amenable to suit within a particular forum regardless of the subject matter of the suit, based on the defendant's continuous and systematic contacts with the forum. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). EMS does not contend that Dr. Despotis should be subject to general jurisdiction in Indiana.

Specific jurisdiction makes a non-resident defendant amenable only to suits arising out of or related to his contacts with the particular forum. *Id.* at 414.

---

²(...continued)
at *12-13 (S.D.N.Y. Jan. 18, 2005) (disagreeing with *Pozzo Truck* and predicting that Indiana Supreme Court would follow the plain language of Rule 4.4(A)).

Whether Rule 4.4(A) requires one step or two in the analysis, it is clear that Dr. Despotis's contacts with Indiana satisfy the enumerated bases in Rule 4.4(A). The first listed basis is "doing any business in this state." See Rule 4.4(A)(1). Dr. Despotis has done business in Indiana by entering into the licensing agreement with EMS. Accordingly, his conduct falls within an enumerated basis for long-arm jurisdiction.

Specific jurisdiction may be based on relatively modest contacts with the forum if they have a substantial connection to the plaintiff's action.  See *Burger King*, 471 U.S. at 474-76; *RAR*, 107 F.3d at 1277-78; *Anthem*, 730 N.E.2d at 1235.

For specific jurisdiction, due process requires that a non-resident defendant must have established his contacts with the forum state by purposefully availing himself of the privilege of conducting business there.  *Asahi Metal Industry Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 108-10 (1987); *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475, quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  In other words, the defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there.  *Burger King*, 471 U.S. at 474.

Defendant Despotis has had contacts with Indiana sufficient to support specific jurisdiction over a suit involving his licensing agreement with EMS.  Dr. Despotis's contacts with Indiana were purposeful rather than random or fortuitous, and they gave him fair warning that he could be subject to suit in Indiana for disputes arising from those contacts. When Dr. Despotis deliberately entered into a long-term contractual relationship with EMS, an Indiana corporation, he purposefully availed himself of the privilege of conducting

business in Indiana. See *Burger King*, 471 U.S. at 473 ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."), quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950); *Purdue Research*, 338 F.3d at 785 (finding personal jurisdiction over defendant's predecessor to cooperative research agreement because the agreement clearly "envisioned continuing and wide-reaching contacts" between the parties), quoting *Burger King*, 471 U.S. at 480; *Woodmar Coin Center, Inc. v. Owen*, 447 N.E.2d 618, 621 (Ind. App. 1983) (defendant "purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident"). This is so despite the fact that this particular dispute concerning the license agreement may have been triggered by EMS's dealings with a third party. Cf. *RAR*, 107 F.3d at 1278 (holding no personal jurisdiction in breach of contact action because defendant's contacts with forum related to different contract between the same parties).

      Dr. Despotis and his attorney have made visits to EMS in Indiana in furtherance of the patent licensing agreement, and Dr. Despotis has retained Indiana accountants to exercise his right to an accounting under the agreement. Cf. *International Medical Group, Inc. v. American Arbitration Ass'n*, 312 F.3d 833, 845 (7th Cir. 2002) (stating actions of defendant's attorneys on his behalf in forum state were attributable to defendant for personal jurisdiction analysis). Even

-8-

without physical presence in Indiana, wire and mail communication may establish minimum contacts, especially as relating to an interstate commercial contract. See *Purdue Research*, 338 F.3d at 781, citing *Burger King*, 471 U.S. at 476; *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990) (observing that defendant "created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction"). The licensing agreement itself even states that it shall be construed according to Indiana law. "It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated" in the minimum contacts analysis. *Burger King*, 471 U.S. at 479. These combined factors demonstrate that Dr. Despotis could reasonably anticipate being sued in Indiana on claims arising from his licensing agreement with EMS.

Once the court finds sufficient minimum contacts, a defendant escapes jurisdiction only by making a compelling case that forcing him to litigate in the forum state would violate traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476; *Logan Productions*, 103 F.3d at 53. Dr. Despotis has not submitted any evidence demonstrating that forcing him to litigate in this judicial district would violate traditional notions of fair play and substantial justice. Though it is always somewhat burdensome to defend a lawsuit away from home, it is not a burden that violates due process in this instance. See *Burger*

*King*, 471 U.S. at 474 (explaining that modern transportation and communications mean it is usually not unfair or too burdensome to require a party to defend itself in a state where it engages in economic activity); *Logan Productions*, 103 F.3d at 54; see also *Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

Dr. Despotis and his attorney have already traveled to Indiana as part of his course of dealing with EMS.  Dr. Despotis would not suffer a significantly greater burden in defending this suit here.  Further, EMS, an Indiana corporation, has an interest in obtaining convenient and effective relief.  See *Burger King*, 471 U.S. at 482-83.  In light of the substantial connection between EMS's claim and Dr. Despotis's purposeful contacts with this forum, and the lack of prejudice to Dr. Despotis in appearing here, this court may exercise personal jurisdiction over Dr. Despotis in this action.

III.     *Venue*

Dr. Despotis has also moved to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  Because neither side has requested an evidentiary hearing on the facts relevant to venue, the court accepts EMS's unchallenged allegations as true and resolves any factual conflicts in the parties'

submissions in favor of EMS. See *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001).[3]

Venue in this case is governed by 28 U.S.C. § 1391(a), which provides that a diversity action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Venue in this court is not available under § 1391(a)(1) because Dr. Despotis is a resident of Missouri, not Indiana, and venue is not available under § 1391(a)(3) because the action could have been brought in the Eastern District of Missouri.

The basis for venue in this district is § 1391(a)(2), which allows venue here if "a substantial part of the events or omissions giving rise to the claim" occurred in Indiana. This rule does not require that the majority of events giving rise to the claim occurred in the forum district, but only that a substantial part of the events took place there. *Eli Lilly & Co. v. Crabtree*, 2004 WL 828247, *8 (S.D. Ind.

---

[3]Judge Crabb has described the division among courts and between the two leading commentaries on federal procedure as to which side bears the burden of proof when venue is contested. See *Latino Food Marketers, LLC v. Ole Mexican Foods, Inc.*, 2003 WL 23220141, at *2 (W.D. Wis. Nov. 24, 2003) (imposing burden on defendant to show venue is improper). Because Dr. Despotis has not presented evidence to support his venue argument, there are no conflicts in the evidence here that would require the court to allocate a burden of proof.

Mar. 19, 2004) (concluding that "the rule does not require a venue to be the location of the 'most substantial' or even the 'more substantial' part of the events"); see also *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). Accordingly, venue under § 1391(a)(2) may be proper in more than one judicial district. *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998); *Enviroplan, Inc. v. Western Farmers Electric Cooperative*, 900 F. Supp. 1055, 1062 (S.D. Ind. 1995).

Under this standard, venue is proper in this judicial district. The claim arises under the parties' licensing agreement. Essentially, EMS asks that it be allowed to reduce royalty payments to Dr. Despotis according to its view of the terms of the agreement. EMS's declaratory action is the mirror image of a coercive action that Dr. Despotis could bring for breach of contract if EMS had unilaterally chosen to cut its payments to him in half.

Dr. Despotis contends that he has not done anything in Indiana and that the suit is based only on EMS's unilateral desire to stop making full payments to him in Missouri, so that one cannot say a substantial part of the events giving rise to the action occurred in Indiana. When one party sues another to demand payment under a contract, courts have held that venue is proper in the location where payments are to be made. See, *e.g.*, *D'Ancona & Pflaum, LLC v. M2 Software, Inc.*, 2001 WL 873021, *1 (N.D. Ill. Aug. 2, 2001) ("Failure to make payment in a district pursuant to a contract is enough under the statute to

establish venue in that district."); see also *TruServ Corp.*, 6 F. Supp. 2d at 792 (denying motion to dismiss on basis of improper venue in Illinois for breach of contract to pay money in Illinois, even though contract was formed and majority of acts of performance occurred in another state).

This approach has some appeal, but it focuses too narrowly on the last triggering event of the lawsuit (or the last triggering event for a mirror-image coercive action by Dr. Despotis), and loses sight of the purpose of the current language in § 1391(a)(2). The First Circuit has explained:

> Prior to 1990, § 1391(a) provided venue in "the judicial district . . . in which the claim arose." 28 U.S.C. § 1391(a) (1988). Congress amended the statute to its current form because it found that the old language "led to wasteful litigation whenever several different forums were involved in the transaction leading up to the dispute." *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (citing Rep. of the Fed. Cts. Study Comm. 94 (Comm. Print 1990)). The pre-amendment statute also engendered a plethora of tests to determine the single venue in which the claim "arose." *See, e.g., Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 284 (1st Cir. 1983) (observing that the Court could choose one of several approaches, including the "significant contacts" test, the "place of injury" test, or the "convenience of the parties" test) (internal citations omitted).

*Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (reversing finding of improper venue in claim for bad faith denial of insurance claim; location where insured vessel sank was proper venue, although parties formed, administered, and allegedly breached their insurance contracts elsewhere).

In light of these considerations, the First Circuit taught, courts should "look, therefore, not to a single 'triggering event' prompting the action, but to the

entire sequence of events underlying the claim." *Id.*, citing *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998) (reversing finding of improper venue where district court had based decision "on a single occurrence which directly gave rise to the plaintiffs' action"); accord, *Production Group International, Inc. v. Goldman*, 337 F. Supp. 2d 788, 798-99 (E.D. Va. 2004) (finding venue proper in Virginia where plaintiff had its headquarters, and where defendant had communicated and visited as part of the "sequence of events underlying the claim"); *Bon Dente Joint Venture v. Pasteurized Eggs Corp.*, 2002 WL 1285805, *4 (N.D. Ill. June 10, 2002) (applying this standard to find that venue would be proper in New Hampshire where other party had entered into patent purchase agreement and long-term commercial relationship with New Hampshire resident); see also *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (to consider events "substantial" under the statute, it is sufficient to establish that events occurring in the forum district were part of the "historical predicate" of the claim).

A proper venue inquiry looks not to the defendant's contacts with the forum, but rather to the location of the events giving rise to the cause of action. See *Master Tech Products*, 181 F. Supp. 2d at 914. In this case and others involving disputes arising in interstate commercial relationships, however, those categories overlap significantly. See, *e.g.*, *Production Group International*, 337 F. Supp. 2d at 798-99; *Bon Dente Joint Venture*, 2002 WL 1285805, *4.

EMS's claim centers on the proper interpretation of its licensing agreement with Dr. Despotis, and in particular the effects of the original provision for set-off of other patent royalties and the 1999 amendment after EMS's initial settlement with NPB. Thus, the sequence of events giving rise to this claim includes the parties' negotiations, execution, and performance of the licensing agreement. In light of the interstate and arms-length character of the parties' commercial relationship, these events occurred in Indiana as much as Missouri. Even when the defendant never personally enters the forum district, venue can still be appropriate if the defendant has communicated with someone in the district, especially over an extended time, and the communications are part of the events giving rise to the claim. *E.g., Master Tech Products*, 181 F. Supp. 2d at 914 (denying motion to dismiss by defendant who had not visited forum district); see also *Interlease Aviation Investors v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) ("The requirements of § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.") (internal citations omitted); *Moore*, 177 F. Supp. 2d at 789 (concluding venue was proper in Illinois in action for breach of contract and declaratory judgment where "underlying contracts were negotiated through plaintiffs in Illinois, sent to plaintiffs' counsel in Illinois, signed by plaintiffs in Illinois, and numerous communications were directed at plaintiffs and their counsel in Illinois").

Dr. Despotis's continuous contacts with EMS in Indiana are part of the "historical predicate" for this case and are sufficient to support venue here. Because a substantial part of the events underlying EMS's claim occurred in this district, venue is proper in this district. Accordingly, defendant Despotis's motion to dismiss or transfer (Docket No. 12) is hereby denied.


So ordered.

Date: November 4, 2005

*David F. Hamilton*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

R. Trevor Carter
BAKER & DANIELS
trevor.carter@bakerd.com

Jane A. Dall
BAKER & DANIELS
jane.dall@bakerd.com

Nancy G. Tinsley
BAKER & DANIELS
ngtinsle@bakerd.com

Mark J. R. Merkle
KRIEG DEVAULT
mmerkle@kdlegal.com

Greg A. Small
KRIEG DEVAULT
gs@kdlegal.com