UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ENGINEERED MEDICAL SYSTEMS, INC. )
)
      Plaintiff, )
)
    v. )  CASE NO. 1:05-cv-0170-DFH-TAB
)
GEORGE M. DESPOTIS, M.D. )
)
      Defendant. )

ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This diversity action is a dispute over royalties from the sale of an innovative resuscitation bag accessory. Defendant George M. Despotis, M.D., invented a patented device that allows physicians to determine the proper placement of an endotracheal tube through the use of a color indicator. See U.S. Patent No. 4,790,327. In November 1996, in exchange for royalty payments, Dr. Despotis gave plaintiff Engineered Medical Systems, Inc. ("EMS") an exclusive license to make, use, and sell devices using his patent. The original license agreement allowed EMS to reduce the royalty rate by up to 50 percent if EMS were required to pay third parties to resolve claims of patent infringement. EMS and Dr. Despotis later amended the license agreement to address competing patent claims of another device manufacturer, Nellcor Puritan Bennett, Inc. ("NPB").

EMS and Dr. Despotis disagree over whether these later events and amendments to the license allow EMS to cut in half the royalty rate it pays to Dr. Despotis. Both sides have filed motions for summary judgment. EMS argues that the royalties it pays to NPB trigger the discount provision in the original license agreement. EMS seeks: (1) a declaratory judgment that it can deduct up to 50 percent of all future royalties due to Dr. Despotis in order to offset payments made to NPB; (2) an order for Dr. Despotis to return the past royalties that EMSA paid him under protest; (3) possession of disputed royalties that EMS previously deposited with the court; and (4) summary judgment in its favor on Dr. Despotis's counterclaims. Dr. Despotis argues that: (1) the amended license prohibits the discount that EMS seeks; (2) EMS materially breached its duties under the license, so that he may terminate the original license; and (3) EMS owes him an accounting of NPB device sales.

For reasons stated below, the court grants Dr. Despotis's motion for summary judgment, except as to the claim for an accounting. The later amendment to the license between EMS and Dr. Despotis prohibits EMS from claiming a 50 percent offset for sums that EMS has paid as royalties to NPB. The undisputed facts show that EMS has materially breached its duties under the license by paying Dr. Despotis only half the royalties he was due for the 2004/2005 and 2005/2006 contract years. Dr. Despotis is not entitled to an accounting of sales of NPB devices using his patent. EMS is entitled to summary judgment on that claim.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where there are no genuine issues of material fact, contract interpretation is particularly well-suited for summary judgment." *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004) (reversing and remanding with instructions to enter summary judgment in favor of plaintiff on issue of Indiana contract law). There are no disputed material facts in this case.

*Undisputed Facts*

George M. Despotis, M.D., is a Missouri citizen and holds a patent for an endotracheal intubation device. Engineered Medical Systems, Inc., is an Indiana corporation with its principal place of business in Indianapolis, Indiana. In 1996, in exchange for promised royalty payments, Dr. Despotis granted EMS an exclusive license to make or sell products using his patent ("Despotis License"). Section 10.01 of the Despotis License allows EMS to reduce its royalty payments

by as much as 50 percent in the event that EMS pays third parties damages or royalties to settle or satisfy claims of patent infringement.

Around January 1998, EMS learned that another medical device manufacturer, Nellcor Puritan Bennett, Inc., was about to release a related resuscitation device. EMS believed NPB's device contained elements that infringed Dr. Despotis's patent. EMS also realized that NPB held a number of patents for features that EMS wanted to include on its own devices. In 1999, EMS and NPB negotiated a cross-license ("EMS/NPB Cross-license") under which the two manufacturers granted access to each other's patents, including Dr. Despotis's patent.

Before executing the EMS/NPB Cross-license, EMS approached Dr. Despotis and asked him to amend the Despotis License. Under Section 2.02 of their original licensing arrangement, EMS was free to sublicense Dr. Despotis's patent to whomever it wished, as long as it paid royalties based on the sublicensee's use. That provision would have caused problems so long as EMS itself would not receive royalties on NPB's use of Dr. Despotis's patent. In the amendment to the Despotis License, Dr. Despotis agreed instead:

> EMS shall have the right to grant a royalty-free sublicense, without obligation of payment to Despotis, to NPB on the condition that NPB grant a license to EMS under NPB owned or controlled patents . . . without liability for infringement to NPB.

Amended Despotis License § 2.02.  At the same time, Dr. Despotis also signed a

"Consent and Release and Covenant Not To Sue" providing:

> Despotis hereby consents to EMS granting to NPB a royalty-free
> non-exclusive license under the Despotis patent upon terms and conditions
> to be negotiated by EMS.

Pl. Ex. D.


In exchange for giving up his right to receive royalties based on NPB's use

of his patent, Dr. Despotis received a number of concessions from EMS.  One of

those concessions governs the central issue in this case:

> Notwithstanding the provisions of 10.01, EMS shall have no right to offset
> any costs or expenses together with any legal fees, liabilities or other claims
> associated with entering into a cross license agreement with NPB against
> royalties payable to Despotis under this Agreement or arising from any
> claim relating to the consent granted by Despotis or any activities
> undertaken by or under the direction of EMS relating to the NPB
> cross-license agreement.

Amended Despotis License § 10.05.


EMS began producing and selling devices incorporating the Despotis and

NPB patents in June 2001.  In September 2002 NPB sued EMS in the Northern

District of California for infringing two of its patents.  See *Nellcor Puritan Bennett,

Inc. v. Engineered Medical Systems, Inc.*, No. 02-4618 (N.D. Cal. Sept. 24, 2002).

EMS answered that its use of the NPB patents was covered by the 1999 EMS/NPB

Cross-license.   EMS and NPB settled the California lawsuit by executing an amended cross-license ("Amended EMS/NPB Cross-license") in September 2003.

Under the Amended EMS/NPB Cross-license, NPB retained its royalty-free right to use the Despotis patent.  EMS, however, agreed to pay NPB royalties after NPB dropped its lawsuit and granted EMS somewhat broader rights to sell devices using NPB-held patents.   There is no evidence that EMS sought (let alone obtained) Dr. Despotis's consent to the settlement.

EMS proceeded to sell devices under both the Amended Despotis License and Amended EMS/NPB Cross-license.  In January 2005, counsel for Dr. Despotis sent EMS a written notice of default pursuant to the parties' license agreement. Shortly thereafter, EMS tendered a check to Dr. Despotis for the royalties due for the 2003/2004 contract year at the full agreed rate ($106,384.05), without taking a deduction under Section 10.01 of the original Despotis License based on EMS's payments to NPB.   EMS stated that it was paying half that amount "under protest."  Pl. Ex. I.

EMS then filed this action seeking a return of half of the royalties paid for 2003/2004 and a declaratory judgment that it could reduce royalty payments to Dr. Despotis for the remainder of the contract term.  The court previously denied Dr. Despotis' motion to dismiss or to transfer venue to Missouri.  *Engineered*

*Medical Systems, Inc. v. Despotis*, 2005 WL 2922448, at *7 (S.D. Ind. Nov. 4, 2005).[1]

After the 2004/2005 contract year passed, EMS again owed Dr. Despotis royalties. Approximately a week before the royalties were due, EMS filed a motion under Rule 67 of the Federal Rules of Civil Procedure to deposit the entire sum with the court. Docket No. 42. The court granted the motion in part. EMS was given leave to deposit only the disputed half of these royalties with the court. *Engineered Medical Systems, Inc. v. Despotis*, 2006 WL 1005024, at *4 (S.D. Ind. Apr. 14, 2006). EMS deposited one-half of the 2004/2005 royalties, Docket No. 61, and paid Dr. Despotis the remaining undisputed sums. In February 2007, the process was repeated for the royalties due to Dr. Despotis for the 2005/2006 year. Half the full amount was paid to Dr. Despotis and half to the court account.

*Discussion*

The central issue here is whether the royalties EMS has paid to NPB pursuant to the Amended EMS/NPB Cross-license fall into a class of expenditures covered by Section 10.05 of the Amended Despotis License. If so, then EMS was not entitled to discount its royalty payments to Dr. Despotis. The issue is

---

[1]The value of the declaratory relief was sufficient to meet the amount in controversy requirement for diversity jurisdiction.

governed by Indiana contract law.[2]  The Indiana Court of Appeals has concisely summarized the basic principles of contract interpretation:

> It is a court's duty to interpret a contract so as to ascertain the intent of the parties.  *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.*, 559 N.E.2d 600, 603-04 (Ind. 1990).  The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one which causes the provisions to be conflicting.  *Id.*  In interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties.  *Id.*  The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts.

*McLinden v. Coco*, 765 N.E.2d 606, 611-12 (Ind. App. 2002).  If the court finds the contract's terms are clear and the intentions of the parties apparent, the court must enforce the bargain the parties made.  *Id.*

I.    *The Reduction of Royalties*

In an effort to obtain Dr. Despotis's consent to the initial royalty-free cross-license with NPB, EMS agreed to limit its rights under Section 10.01 of the Despotis License to reduce its royalties to Dr. Despotis:

> Notwithstanding the provisions of 10.01, EMS shall have no right to offset any costs or expenses together with any legal fees, liabilities or other claims associated with entering into a cross license agreement with NPB against royalties payable to Despotis under this Agreement or arising from any claim relating to the consent granted by Despotis or any activities

---

[2]The Despotis License includes a choice-of-law provision that provides: "This Agreement shall be construed in accordance with the laws of the State of Indiana." "Indiana choice of law doctrine favors contractual stipulations as to governing law."  *Allen v. Great American Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002), citing *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. App. 1999).

undertaken by or under the direction of EMS relating to the NPB cross-license agreement.

Amended Despotis License § 10.05.


A.     *Royalties as Costs, Expenses, and Liabilities*

EMS first argues that none of the terms used in Section 10.05 ("costs," "expenses," "legal fees," "liabilities," and "other claims") have the same meaning as "royalties," and that if the parties intended for royalties such as those paid to NPB to be covered by the section, they would have said so more specifically. The court disagrees. None of the phrases in Section 10.05 are precisely co-extensive with "royalties," but the plain meanings of the broad terms "costs," "expenses," and "liabilities" necessarily include the royalties EMS agreed to pay NPB under the Amended EMS/NPB Cross-license, and the add-on of "other claims" confirms the intent to sweep as broadly as possible.


An expense is: "That which is expended, laid out or consumed. An outlay; charge; cost; price. The expenditure of money, time, labor, resources, and thought. That which is expended in order to secure benefit or bring about a result." *Mears v. Lake County Council*, 709 N.E.2d 747, 749 (Ind. App. 1999) (defining the plain meaning of "expense" as used in Ind. Code § 31-6-9-5(b)), quoting Black's Law Dictionary 577 (6th ed. 1990). Similarly, "costs" are simply sums paid or charged. The undisputed fact is that EMS has paid and continues to pay NPB, and NPB has charged and continues to charge EMS, an amount of

money to secure a benefit for EMS:  NPB's agreement to drop the lawsuit and to allow the use of its patents.  EMS expends money in the form of paying NPB a royalty and receives something in return.  These royalty payments fall squarely within the broad terms "expenses" and "costs."

The applicability of "liability" is also clear.  The word "is a broad legal term of the most comprehensive significance and incorporates all character of debts and obligations." *DeVries v. QUAD Technologies*, 1995 WL 591452, at *5 (N.D. Ill. Sept. 29, 1995) (internal quotations omitted); see also *Montauk Oil Transp. Corp. v. Tug El Zorro Grande*, 54 F.3d 111, 114 (2d Cir. 1995) (acknowledging "liability" as a broad legal term).  The royalty payments in question are obviously debts and obligations that EMS has owed NPB and are well within the meaning of the term. Reading together the multiple terms "any costs or expenses together with any legal fees, liabilities or other claims," it is clear that the parties drafted Section 10.05 of the Amended Despotis License to sweep as broadly as possible, and certainly broadly enough to reach any royalties that EMS might pay NPB in the future.

EMS argues that this reading runs counter to the parties' intent at the time they executed the Amended Despotis License.  When the parties executed Section 10.05, they understood that EMS was seeking only a royalty-free cross-license with NPB.  Under EMS's reasoning, therefore, neither side could have anticipated that EMS would make any royalty payments to NPB to which Section 10.05 might apply.

-10-

The broad terms in Section 10.05 should not be read in the narrow manner EMS suggests. Even when EMS and Dr. Despotis signed the Amended Despotis License, there was no guarantee that royalties to NPB were out of the picture. Entering an agreement that is ostensibly royalty-free does not eliminate all potential for future royalty payments. The litigation between EMS and NPB is proof enough of that. The fact that EMS and Despotis employed such broad terms in Section 10.05 shows just such an uncertainty about how the relationship between EMS and NPB would turn out. EMS and Dr. Despotis employed broad terms that clearly included potential payment of royalties. Also, in the Consent and Release and Covenant Not to Sue, Dr. Despotis agreed to allow EMS to grant a royalty-free non-exclusive license to NPB "upon terms and conditions to be negotiated by EMS." That broad grant of authority to EMS to negotiate the terms of the license gave EMS flexibility that could include the payment of royalties. Accordingly, the royalties that EMS has paid and will continue to pay NPB fall within the category of costs, expenses, and liabilities that are excluded from EMS's rights to pay discounted royalties under Section 10.01 of the original Despotis License.

      B.    *Connection between NPB Royalty Payments and the original NPB Cross-License*

EMS also contends that Section 10.05 does not apply to royalties paid to NPB because these royalties were not sufficiently related to the original EMS/NPB Cross-license. To be covered by Section 10.05, the costs, expenses, or liabilities

must "aris[e] from any claim relating to the consent granted by Despotis or any activities undertaken by or under the direction of EMS relating to the NPB cross-license agreement."     Amended Despotis License, Section 10.05.   The EMS payments to NPB clearly arise from "activities undertaken by or under the direction of EMS."  The only question is whether those actions "relate" to the original EMS/NPB Cross-license.

EMS argues it agreed to pay NPB royalties in exchange for "new rights" beyond those it acquired from NPB in the original EMS/NPB Cross-license.  Pl. Reply Br. at 17-18.  EMS did in fact acquire broader (or at least clearer) rights to practice the NPB patents in the Amended EMS/NPB Cross-license.  That fact does not mean that the transactions are unrelated.

Again looking at the plain meaning of the term, "relate" means:  "To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."  *Storey Oil Co., Inc. v. American States Ins. Co.*, 622 N.E.2d 232, 235 (Ind. App. 1993), quoting Black's Law Dictionary 1288 (6th ed. 1990).  EMS obligated itself to pay royalties to NPB in the document titled "Amendment to Cross License Agreement."  As the name implies, the amendment served to clarify and modify the rights originally established in the original EMS/NPB Cross-license that is the subject of the disputed Section 10.05.  The amendment made repeated references to the prior cross-license.  The connection

between the two agreements goes beyond mere semantics.  Both the subject matter and basic purpose of the two documents are substantially related.

In the original EMS/NPB Cross-license, EMS secured rights to make, have made, and use NPB Licensed Products that incorporated NPB Licensed Patents. The EMS/NPB Cross-license and the same NPB patents were at the very heart of the California litigation between EMS and NPB.  EMS's answer made clear that the EMS/NPB Cross-license was central to the litigation.  Among its affirmative defenses, EMS specifically raised the original EMS/NPB Cross-license.  EMS and NPB chose to avoid judgment as to whether EMS's activities had been licensed and whether they had infringed NPB's patents.  EMS and NPB settled their dispute by signing the "Amendment to Cross-License Agreement" in September 2003, wherein EMS agreed to pay NPB the royalties that gave rise to this case.

The same patents and rights established in the original EMS/NPB Cross-license did more than "stand in some relation" to this subsequent amendment. They stood at the very core.  By obligating itself to pay royalties to NPB, EMS was clearly engaged in activities related to the original EMS/NPB Cross-license. Section 10.05 applies.  EMS's motion for summary judgment therefore must be denied insofar as EMS seeks a declaratory judgment that it can deduct up to 50 percent of all future royalties due to Dr. Despotis to offset payments made to NPB, an order for Dr. Despotis to return the past royalties tendered under protest, and the return of disputed royalties deposited with the court.  The undisputed facts

show that Dr. Despotis is entitled to summary judgment on these issues, and he is entitled to the full royalty rate, not just 50 percent.

II.    *Dr. Despotis's Counterclaims*

    A.    *Failure to Pay Royalties to Dr. Despotis*

In his counterclaims, Dr. Despotis alleges that EMS's failure to pay the full amount of royalties entitles him to recover the funds deposited with the court and, perhaps more important, to terminate the original Despotis License.  Based on the undisputed facts, the court agrees.

EMS was obligated to pay Dr. Despotis accrued royalties within 90 days after the end of each contract year.  After the contract year running from November 2002 through October 2003, EMS tendered a timely check to Dr. Despotis for the full amount of royalties without any deduction, offset, or reservation of rights.  After the contract year running from November 2003 through October 2004, EMS expressly reserved the right to deduct 50 percent of the full amount but nevertheless sent Dr. Despotis a check for the full amount of royalties.

At issue now are the royalties for the contract years ending in October 2005 and October 2006, and future years.  EMS took the position that it was entitled to use the royalties it paid for use of NPB's patents to offset 50 percent of the

original royalty rate due to Dr. Despotis.  In January 2006 (about a week before the due date for payment of 2004/2005 royalties), EMS filed a Rule 67 motion requesting leave to deposit with the court the entire amount due under the original rate, pending the outcome of this litigation.  See Docket No. 42.  Because only half of that amount was truly in dispute, the court allowed EMS to deposit one half the full amount.  *Engineered Medical Systems, Inc.*, 2006 WL 1005024, at *4.  EMS paid the remaining half to Dr. Despotis.[3]  This process was repeated more recently for the 2005/2006 royalties.  Dr. Despotis now argues that EMS's decision not to pay him the full amount due but to deposit half with the court amounted to a breach of the original Despotis License, as amended.  Dr. Despotis claims he is therefore entitled to the royalties deposited with the court, accrued interest, and most important, a declaration that he may terminate the license agreement.  Docket No. 68 at 26.

For reasons stated previously, Dr. Despotis is certainly entitled to the deposited amount and any accrued interest.  EMS incorrectly interpreted its license with Dr. Despotis and improperly withheld royalty payments from him for the last two contract years.

The Despotis License provides that "Despotis shall have the right to terminate this Agreement in case of default by EMS with respect to any obligation

---

[3]Dr. Despotis does not dispute whether EMS timely paid the undisputed after the court issued its order.

which it has hereunder and which default continues for (90) days after receipt by EMS of written notice of such default."  Despotis License § 5.03.  At the very core of the Despotis License was EMS's obligation to pay Dr. Despotis royalties based on sales of devices using his patent.

The undisputed facts show that for the past 14 months and counting, EMS has failed to pay Dr. Despotis half the royalties due.  This breach was material. Royalties were easily the most substantial benefit Dr. Despotis derived from his agreement with EMS.  Dr. Despotis gave EMS proper notice of default in February 2006.  EMS nevertheless chose to deposit half the due amounts with the court pursuant to Rule 67, where it has remained until today.

The fact that the court granted EMS permission to deposit the funds does not excuse its failure to pay Dr. Despotis his due royalties.  EMS chose this strategy and made this deposit, rather than paying Dr. Despotis, at its own peril. As EMS was well aware when the court granted permission to deposit half the royalties due, Rule 67 "cannot be used as a means of altering the contractual relationships and legal duties [or rights] of each party."  *Engineered Medical Systems, Inc. v. Despotis*, 2006 WL 1005024, at *2 (S.D. Ind. Apr. 14, 2006), citing *LTV Corp. v. Gulf States Steel, Inc.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992).  With that warning, EMS still elected to go forward with the deposits for two years.  The consequence of EMS's strategy was that Dr. Despotis was not paid what he was

owed under the contract.  EMS breached the Despotis License, and Dr. Despotis
is entitled to terminate it according to the terms upon which the parties agreed.


>    B.    *EMS's Modification of the EMS/NPB Cross License*

According to Dr. Despotis, EMS also materially breached their licensing
agreement by unilaterally executing the Amended EMS/NPB Cross-license.  He
argues that EMS was required to obtain his consent before entering into any such
arrangement.  No written provision required EMS to obtain his consent before
amending the EMS/NPB Cross-license.  Because EMS asked for Dr. Despotis's
consent the first time it gave NPB a royalty-free license, he argues, he was entitled
to approve any subsequent modification to that agreement.  His theory is that
EMS by its conduct modified the original Despotis License to include such a
requirement.  See Def. Br. at 23-24.


The clear terms of the Amended Despotis License preclude this claim for
breach.  There simply is no basis to find that EMS modified the contract through
its actions.  On the contrary, EMS acted within its rights under the Amended
Despotis License when it executed the Amended EMS/NPB Cross-license.


The 1998 Amended Despotis License gave EMS broad authority to negotiate
a cross-license agreement with NPB:

> EMS shall have the right to grant a royalty-free sublicense, without
> obligation of payment to Despotis, to NPB on the condition that NPB grant

a license to EMS under NPB owned or controlled patents granting EMS the right to make, have made, use and sell resuscitators including a $CO_2$ indicator on the exhalation port of the resuscitator directional control valve without liability for infringement to NPB.

Amended Despotis License § 2.02.  Dr. Despotis placed only one condition on EMS's authority to strike a deal with NPB.  EMS had to obtain a license to use certain NPB patents without liability for infringement.  Dr. Despotis did not require NPB's license to be royalty-free.

The broad nature of EMS's authority is underscored by the "Consent and Release and Covenant Not to Sue" that Despotis and EMS executed with the Amended Despotis  License.  The Consent provided:  "Despotis hereby consents to EMS granting to NPB a royalty-free non-exclusive license under the Despotis patent *upon terms and conditions to be negotiated by EMS.*"  Pl. Ex. D (emphasis added).  The precise nature of the agreement between EMS and NPB remained open and still allowed EMS to give NPB a royalty-free license.

When EMS executed the Amended EMS/NPB Cross-license, it was still operating within the scope of the broad authority Dr. Despotis granted in the Amended Despotis License and the Consent and Release and Covenant Not to Sue.  EMS obtained from NPB an agreement that complied with Dr. Despotis's single condition:  EMS gained access to the NPB patents without liability for infringement.  Dr. Despotis's claim for breach due to EMS's failure to obtain his consent therefore fails as a matter of law.

-18-

C.    *Accounting*

Dr. Despotis also seeks an order directing EMS to provide an accounting of all sales of Despotis-licensed devices, particularly those devices NPB sold using his patent. "An action for an accounting is equitable in nature with the purpose of adjusting the account of the litigants and of rendering complete justice in a single action." *Vickers v. Henry County Savings & Loan Ass'n*, 827 F.2d 228, 232 (7th Cir. 1987), quoting *Anacomp, Inc. v. Wright*, 449 N.E.2d 610, 616 (Ind. App. 1983). Dr. Despotis claims he is owed royalties for all Despotis-licensed devices made by NPB pursuant to the Amended EMS/NPB Cross-license. He requests an accounting to determine this unknown amount.

The terms of the original Despotis License required EMS to pay Dr. Despotis a royalty each time a sub-licensee sells a Despotis-licensed device. See Despotis License § 2.02. When the parties amended the Despotis License, however, they modified Section 2.02 to include the following sentence:

> Notwithstanding the foregoing, EMS shall have the right to grant a royalty-free sublicense, *without obligation of payment to Despotis*, to NPB on the condition that NPB grant a license to EMS under NPB owned or controlled patents granting EMS the right to make, have made, use and sell resuscitators including a $CO_2$ indicator on the exhalation port of the resuscitator directional control valve without liability for infringement to NPB.

Amended Despotis License § 2.02 (emphasis added). Dr. Despotis acknowledges executing this amendment with the idea of waiving his right to demand royalties from EMS for NPB's use of his patent. However, Dr. Despotis insists that he

signed this waiver with the understanding that the EMS/NPB Cross-license was mutually royalty-free. He argues therefore that EMS was no longer acting with the benefit of his waiver when it later agreed to pay NPB royalties for use of NPB patents.

Dr. Despotis's subjective understanding does not matter. He waived his right to receive royalty payments from NPB devices. "Clear, plain, unambiguous terms are conclusive of intent." *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. App. 2003), citing *Art Country Squire, L.L.C. v. Inland Mortgage Corp.*, 745 N.E.2d 885, 889 (Ind. App. 2001). The amendment to Section 2.02 made no mention of any requirement for EMS to obtain royalty-free access to NPB's patent. As noted, Dr. Despotis placed one and only one condition on his waiver; NPB had to license its own patents to EMS "without liability for infringement." Amended Despotis License § 2.02. That is precisely what NPB did when it executed the Amended EMS/NPB Cross-license. In exchange for payment of royalties from EMS – none of which Dr. Despotis is responsible for paying – NPB agreed to allow the use of its patents without liability for infringement. Dr. Despotis expressly allowed EMS to grant NPB a royalty-free license "upon terms and conditions to be negotiated by EMS." Pl. Ex. D. EMS's willingness to pay NPB royalties was such a term. Dr. Despotis therefore has no right to receive royalties from the sale of devices NPB produced pursuant to the Despotis License. Nor does he allege EMS owes royalties from sublicensing his patent to any other third-party manufacturers.

Accordingly, there is no basis for granting Dr. Despotis's request for an accounting.

*Conclusion*

Dr. Despotis' motion for summary judgment (Docket No. 91) is granted in part and denied in part. Dr. Despotis is entitled to summary judgment in his favor on the claim that EMS is not permitted to reduce his royalty payments by as much as 50 percent to offset royalties paid to NPB. He is therefore entitled to the funds on deposit with the court, as well as any accrued interest. Dr. Despotis is also entitled to summary judgment in his favor on the claim that EMS breached the contract by failing to remit royalty payments for sales of Despotis-licensed devices. He is therefore entitled to terminate the Despotis License and subsequent Amended Despotis License. EMS's motion for summary judgment (Docket No. 52) is granted only as against Dr. Despotis's counterclaim for accounting; EMS's motion is otherwise denied. Final judgment shall be entered accordingly.

So ordered.

Date: March 30, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

R. Trevor Carter
BAKER & DANIELS
trevor.carter@bakerd.com

Jane A. Dall
BAKER & DANIELS
jane.dall@bakerd.com

Nancy G. Tinsley
BAKER & DANIELS
ngtinsle@bakerd.com

Greg A. Small
KRIEG DEVAULT
gs@kdlegal.com

Mark J.R. Merkle
KRIEG DEVAULT
mmerkle@kdlegal.com